Mr. Colbert, when you're prepared, please proceed. Thank you, Your Honor. May it please the Court, my name is Dan Goldberg and I represent Juan Colbert on this appeal. The District Court erred in failing to allow Mr. Colbert to withdraw his guilty plea because he did not plead guilty knowing involuntarily and because of the Brady violations. A just and fair reason exists to withdraw his guilty plea because DeVolcanair, only months in this time, shot and killed an innocent man while violating his Fourth Amendment rights. So I think this was extremely troubling. It wasn't just troubling to Mr. Colbert, it was troubling to the District Court, too. The government didn't initially produce any of these documents. We had to file a motion to compel the production of those documents. And in ordering those documents to be compelled, the District Court said that whether DeVolcanair violated the Fourth Amendment is an issue in this case and goes to DeVolcanair's credibility in this case. But then in denying the ultimate relief that we sought to withdraw the guilty plea, the Court said, well, this is an unusual case, but didn't follow through with its analysis, I think, based where it essentially found the Court violated Brady and violated Rule 16. And so I think there are four main reasons why the District Court's order is not sustainable. The first issue is that in denying relief, it just assumes that Mr. Colbert pled guilty knowingly and voluntarily. And that just goes to the heart of our issue. And I think once you go through it piecemeal, you can see that he couldn't have pled guilty knowingly and voluntarily. The second issue is that the District Court . . . But what is the implication of the defendant's choice not to plead with some reservation of rights? I don't . . . I think, again, it goes back to if you violate our due process, right, and if you violate someone's Fourth Amendment rights and there's all these constitutional violations, the fact that someone unconditionally pleads guilty is not sufficient to solve those problems, I think, under the Constitution. Because holding otherwise would be to allow the police to invade our homes with impunity, know that they invaded our homes with impunity, and cover up that evidence, and then say, well, it's no big deal because you pled guilty. We don't have the evidence to sustain our allegations. There's no . . . Well, wouldn't it be a different case if the evidence involved was evidence that specifically applied to this defendant as opposed to evidence that essentially would be used as impeachment? Let me show you why I think it does directly apply because I think your point is well taken, Your Honor. If it had no bearing on our case, then we'd be just grasping at straws. But here, I think there are specific reasons to be concerned about DeVal Canaire's involvement in this case. One of our allegations in our Fourth Amendment motion, motion express, was that the consent to search the car was not valid from Apolonia Hatch. DeVal Canaire is the sole policeman that goes and gets Apolonia Hatch. That's horribly concerning. And let me explain why. I think you have to go back to DeVal Canaire's conduct here. He went to Cameron Land's home, went on that property with no basis to do so, and after shooting and killing him, he lied about it in a police report. He said that Cameron Land had a gun. There was no evidence to support that allegation. In fact, there was even evidence, and this is in our appendix, page four, that was submitted to the grand jury, that he may have planted that gun. And that it was put by Cameron Land's left hand, which he could not use because it was disabled. So that strikes to the core of not just your typical bad conduct. This goes to the core of our case, too. Is it clear in this case that if you're given another opportunity to plead and to try this case, that the absence of, or the ability to impeach or cross-examine this officer would render the evidence against the defendant so damaged that no case could produce a conviction? I think it's also a great question. I don't think we have conclusive proof yet, but I don't think that's our standard. I do think we have a good basis to say this would change the outcome. And even the district court in denial and relief acknowledged that, that it increased our chances of winning the motion to suppress. That's all I think we need to have a new suppression hearing, because there's no prejudice to the government here. And another big picture reason I think why this should be reversed and remanded is we just weren't prepared for cross-examination. How can we be prepared when we knew nothing about DeVolcan Air? And it's kind of like the movie A Few Good Men. When you have good impeachment material, amazing things happen, where you can't handle the truth moment. We didn't get to have that moment, and that's what justice is all about. That's what due process is about, and I think that strikes to the core of why we think this should be remanded. But the district judge didn't buy that. The district judge did say it could make a difference, but I think he used, and I'm quoting here, by a small degree, ultimately not making the motion to suppress successful. What's your response to that? I don't know how that small degree finding is sustainable, because it doesn't really engage in the Fourth Amendment analysis. That's what's concerning, is it just throws that out there, and it's not one that's latched on by the government, the small degree finding. Why is it just small? This is shocking. Well, I agree with that, but when you get to common authority, and I think this might I'm glad you brought that up, because I don't think that's accurate, the district court's analysis. First of all, it wasn't the same testimony. The only divulcaneer was there with this victim, right? That's just the record. So we don't know what happened during that car drive, what he talked about with her and what the discussions were. But the other thing is the other bad wrongdoer is Schwamm. He's still on the force. Guess who was the first person on Cameron Lamb's property? Schwamm was. Guess what he did without any lawful authority? He went on this property in darkness, in silence, with his gun drawn. Moments later, Cameron Lamb was shot dead. So he's a wrongdoer, too. And this is the nightmare team, the same team that's involved in our case. So I think in these types of unusual cases, we need to treat it unusual, because most cops are very honorable, and they serve with dignity. But when we have these types of unique cases, we have to say, no, we're not going to affirm. No, we're not going to do that, because I think it denigrates our system of justice and it puts these other honorable officers at harm, because the public is at risk and impugns the . . . What's your best case for getting around the absence of a conditional plea? Well, I don't think the . . . The plea was unconditional. Right. I think that that even . . . I would go to the Ruiz case, because that's the Supreme Court's proposition that we have to somehow get around. But I think Ruiz actually reserves this issue. And let me just read you a portion of that. Ruiz dealt with a guidelines issue, and there's a binding guilty plea. Okay? We don't have any of those issues. We instead have due process claims, Fourth Amendment claims. And what the Supreme Court says to Ruiz, if you would have brought a more significant claim under Rule 11, we would have listened. And what the Court said at page 631, quote, other guilty plea safeguards, see Federal Rule Criminal Procedure 11, diminishes the force of Ruiz's concern that in the absence of impeachment information, innocent individuals accused of crimes will plead guilty. And it cites to the McCarthy case, discussing Rule 11's role in protecting a defendant's constitutional rights. So I think what the Court's saying is that if you bring that type of claim, we'll listen to it. And so it reserves that issue. What about the other issue that I think is sort of lingering out there, which is whether Giglio and Brady even apply to Fourth Amendment suppression hearings? Because it is . . . the Supreme Court, when they discussed it, has discussed it as a trial right. And obviously, a suppression hearing is not a trial. And so I want to give you a chance to address that. I appreciate it, Your Honor. I think the government doesn't want to get to that issue, and I think for a reason. I think if you do get to that issue and you resolve it in our favor, I don't think there's anything else to do but to reverse in this case, because the district court essentially said, I think, that Brady was violated. But I understand there isn't even really a split on the issue, though. That's what's fascinating about it. The Fourth, Fifth, and Ninth Circuits, all circuits that have considered it, have ruled on the issue in our favor. Now, the D.C. Circuit has intonated that it might reach the contrary result, but even the government concedes that it hasn't yet. And I think that's for good reasons that we want . . . that these rights should apply. Again, we could go back to another parade of horribles, where otherwise, you know, these rights under the Due Process Clause and the Fourth Amendment aren't given much meaning. And, you know, we cite these cases from the Fourth, Fifth, and Ninth Circuits to explain that, why Brady should apply in this context. If there's no other questions, I'd like to reserve the remainder of my time for rebuttal. All right. Thank you, counsel. Mr. Wagner? Good morning. May it please the Court, David Wagner for the United States. I'd like to start just by talking about what the impeachment of former Detective DeVolcanaire could have looked like had the government disclosed information that he had been involved in a shooting in 2019. Under the rules of evidence, which admittedly don't technically apply at a suppression hearing, but which are relevant to determining materiality of evidence and which a district court can consider in allowing scope of cross-examination, Mr. Colbert would not have been permitted to bring in evidence of what happened, the events surrounding Cameron Lamb, because that's a completely different case. There had been no finding of a Fourth Amendment violation in that case at that point. There had been a shooting and there was an ongoing investigation. That's it. You don't think it would have been impeachment evidence? There's a Fourth Amendment issue in that case. Ask questions about it. There's a Fourth Amendment issue in this case, and therefore ask if he's really following the Fourth Amendment, that whole line of questioning. I don't think so, because that's simply propensity evidence. The fact that the argument would be because he violated the Fourth Amendment on another occasion, he must have violated the Fourth Amendment on this occasion. There's a reason the rules of evidence don't allow that, because those two things don't necessarily follow. The circumstances could be, of the cases, were entirely different. Just because Detective, former Detective DeVolcaneer may have violated the Fourth Amendment on another case doesn't mean he violated it in this case. And to show that he knew what the Fourth Amendment parameters were. I don't think so, because the Fourth Amendment is not a subjective inquiry. The Fourth Amendment is always an objective inquiry. So what he specifically knew wouldn't have been material to the Fourth Amendment issue in the case. The question is, objectively speaking, were Mr. Colbert's rights violated in this case? And if you think about it, to get into that other case, the 2019 shooting, Mr. Colbert would have had to bring in all the witnesses from that case. There would have been an entire separate, it would have essentially been two suppression hearings. And, I mean, the district court wouldn't have wanted to opine about whether the Fourth Amendment was violated in a completely separate case. That would step. That sounds like a Rule 403 balancing to me to some degree. And I don't know that we can guess what the district court would have done in exercising its discretion on that point. Can we even abrade a reasonable problem? Because the district court didn't rely on that point of sort of, well, it would have been confusing, it would have been a separate trial, it would have added a lot of extra elements to the case. I think it goes more to the materiality of that evidence. And the fact that it's, I do think that evidence that is inadmissible under the Federal rules in a lot of cases is not going to be material under Brady. And I think, I believe we cited a Tenth Circuit case in our brief that makes that point. So I think it just goes back to whether this would have been material. I mean, there's just, I don't understand, and maybe I misunderstand his argument, but I don't understand Mr. Colbert to be arguing that the fact that there was a shooting in 2019 was necessarily impeaching of former Detective DeVolcanair's credibility. I take him to be arguing more of a propensity argument. And there's a reason we don't allow those sorts of propensity arguments. I do want to address one thing. I believe Mr. Goldberg referenced that, said something about DeVolcanair lying in that separate case. I don't think there's any finding in that case that he lied. This is not in the record, but to the extent the court wants to take judicial notice of it, at the sentencing hearing in the DeVolcanair case, the state court actually found that he had testified credibly in that case. So I just, I don't think that's true to say that he lied. I don't think there was any finding of that. And again, for the district court in Mr. Colbert's case to make that finding would have required proof of the entire circumstances that surrounded that 2019 shooting. It would have been a completely separate, I mean, it would have been two suppression hearings in one, essentially. And I just don't think it's realistic that a district court would allow that when the only issue could go to the officer's credibility. But what would the government have put in if a suppression hearing was held and a suppression order granted? How would the government prove its case? If the evidence, if the gun and the other evidence in the car had been suppressed? Yes. I don't think we could. I mean, I think that was game, set, match. I think if that evidence had been suppressed, we would have had to either decide to take an appeal of that issue or. A pretty significant issue to. It is. It is and it isn't. Because the suppression is not a personal right of a defendant. It's purely a prophylactic rule. It's a judicially made rule. It's not a defendant's personal right. And the Supreme Court has recognized repeatedly that suppression of evidence imposes a heavy cost on society because it can result in letting guilty people go free. Could the government get the same evidence in without Detective Valconeer? At the suppression hearing or at trial? At trial. I believe so. I believe essentially Detectives Hill and Schwalm were there at the time of the arrest and they saw Mr. Colbert carrying the drawstring bag that was later found to contain the magazines. They participated in the arrest during which the holster for the gun was found in his pants or on his belt. And they also, at least I believe Detective Schwalm, was present for the search during which the gun was found. So I don't think that Valconeer would have been a critical witness at a trial. What about at the suppression hearing? I think the same goes for that too. I think if you look at the, and we put it in the appendix of exhibits, if you look at the consent form for searching the car, the form was filled out by Schwalm, not by DeValconeer. DeValconeer witnessed it, but Schwalm filled it out. So he could have testified about the victim. Well, the opposing counsel says he suffers from some of the same credibility defects. He was involved in the 2019 shooting, but again, I don't think that goes to credibility. He hasn't been prosecuted in that case. I'm not aware of any disciplinary proceedings brought against him. Mr. Goldberg represented that he's still on the force. I don't think the fact that he was involved in that shooting impeaches his credibility. But going back to the nature of the exclusionary rule, I think we can't lose sight in this case that Mr. Goldberg is not denying his guilt of this crime, even as he seeks to go back and try to suppress evidence. He's not denying his guilt. He's pleaded guilty under oath. The right to have evidence suppressed is not his personal right. Is there anything in the record to indicate that the consent form signed by the owner of the vehicle is somehow suspect or is valid? No, not that I'm aware of. In fact, I think that goes to the question of whether DeValconeer's credibility was even that critical at the suppression hearing. Because you could imagine a situation where the district court could have said, well, I don't really find his testimony particularly credible, but he authenticated the consent form, and I'm going to rest my basis for my decision denying the motion to suppress on the consent form. We just don't know. We don't know whether the district court would have granted the motion to suppress, whether the district court would have denied the motion, because Mr. Goldberg pleaded guilty before any ruling had been issued. So I think to say DeValconeer's credibility was critical to the suppression, to whatever the ruling would be on the suppression motion, that's speculation. We don't know that that's the case. We don't know what the ruling would have been. There was no report and recommendation issued by the magistrate. There was no opportunity which would have given Mr. Colbert the opportunity to submit objections and challenge particular factual findings that he took issue with. That could have clarified whether credibility was at issue. There was no decision issued by the district court. We just don't know whether DeValconeer's credibility would have even been that critical for purposes of the suppression hearing. And that's why the – and I'm asking you to engage in speculation. But why – I'm going to ask you this way. Why do you think the district court ultimately said that it would only help the defendant by a small degree with regard to suppression? Yeah, I think it goes to the point I made earlier, which is that it doesn't relate to DeValconeer's credibility. The fact that he was involved in a shooting doesn't – is not a credibility issue. It doesn't suggest he's lying, particularly it doesn't suggest he's lying in this case. And I think the important thing to keep – another important thing to keep in mind there is Mr. Colbert has never explained why he thinks he would be likely to succeed at another suppression hearing. I mean, what does he think – he hasn't said what he thinks DeValconeer testified to. That's not true. He hasn't presented the court with any other version of events. I think that relates to your point, Chief Judge Smith, which is that the credibility – to the extent there's any impeaching evidence, information in this case, that issue, it doesn't relate to this particular case. It doesn't suggest that – it's not, say, a report that was withheld that suggests the stop and arrest of Mr. Colbert and the search of the car happened in a different way than DeValconeer testified to. There's no alternative version of events suggested. So I guess the idea would be we go back to a suppression hearing, but what will change? I mean, there's no – Mr. Colbert hasn't said the events happened any way differently than former Detective DeValconeer testified to. I think that's an important thing to keep in mind. Another important thing to keep in mind is that when this court is thinking about was this evidence material, was this information material, the 2019 shooting, the 2006 state court order, that inquiry has to be limited to what information existed at the time of the suppression hearing in January of 2020. So it's not appropriate, I don't think, to look ahead and say, well, was subsequent developments material, the fact that there were charges brought against DeValconeer, the fact that he was ultimately found guilty. Those things should not be considered. I think the Court's inquiry needs to focus on the state of play as of the time of the suppression hearing, because the allegation is that the government withheld evidence that was in existence at that point in time. So – Are you familiar with the Ruiz case that your co-counsel points out or the opponent points out? I'm very familiar with it, Your Honor. Would you give your version of its application to this case? Well, I didn't quite understand the point he was making, but to me, the key point from Ruiz, and frankly, I think the Ruiz case decides this case in the government's favor, because the key point from Ruiz is that impeachment information is not important to the knowing and voluntary nature of the guilty plea, and the case explains why. The whole argument here is my guilty plea was not knowing involuntarily, and I should be allowed to withdraw it because I didn't know impeachment information. And Ruiz says that's not true. Impeachment information relates to how the trial would proceed, how evidentiary hearing would proceed. It does not relate to whether your guilty plea is knowing and voluntary, and the case explains why. So, frankly, I think the Court could look at Ruiz and stop there. I don't think there's any need to go further, because it makes that critical point, particularly when you then look at cases like McHenry from this Court, which we've cited, which says that when you plead guilty, you give up your right to seek suppression of evidence. And because when you plead guilty, you give up your right to seek suppression of evidence, the desire to go back and relitigate a suppression issue is not a fair and just reason to withdraw a guilty plea, because you've given that up. The Supreme Court's decision in Tallet v. Henderson talks about a guilty plea as breaking the causal chain of events in a criminal case. Once you plead guilty, you give up your right to bring claims like Fourth Amendment claims that have happened earlier and to seek suppression of evidence. And so when you take Ruiz, which says impeachment information is not necessary to the knowing and voluntary nature of a guilty plea, when you take McHenry, which says you give up your right to seek suppression of evidence when you plead guilty, and then when you take United States v. Brady, which says to the extent a defendant doesn't understand the quality of the government's case, how strong the government's case is against them, that's also not a reason to go back and withdraw a guilty plea. Because the defendant doesn't have to understand the quality of the government's case, how strong the defendant's case is to knowingly and plead guilty. Counsel, why not just send this all over in the beginning and then fight about its admissibility later? I'm wondering how all of this transpired. And maybe it's not in the record. You can tell me it's not in the record. But it seems like the safest thing would have been just send everything you had on the detective over there, and then you can fight out what's admissible. Well, we didn't know about it. Okay. So that's the simple explanation. And I would still say, I mean, our position still is that the undisclosed information at that point in time was not material, so technically didn't need to be disclosed under Brady v. Giglio. I understand the district court ruled differently, which is why we disclosed it. But I don't think it's true that the district court found somehow that the information was material under Brady and Giglio. The district court said it needed to be disclosed. It didn't say there was a Brady violation or a Giglio violation in not disclosing it. Two other real quick points, and they just sort of relate to the framework of deciding this case. I think it's important to remember that the standard of review here is abuse of discretion. So the question is, if this is a tough case, did the district court, to the extent the court finds it a tough case, did the district court abuse its discretion in denying the motion to withdraw the guilty plea? And second and relatedly, a defendant has the burden to show a fair and just reason to withdraw a guilty plea. That comes from this Court's precedent and also comes straight from the text of Rule 11. A defendant must show a fair and just reason. So it's not the government's burden to show there's not a reason to withdraw a guilty plea. It's Mr. Colbert's burden to show that there is a reason to withdraw, and in my view, he hasn't met that burden. Unless there are any further questions, I would ask the Court to affirm. Thank you. Mr. Wagner? Mr. Colbert, your rebuttal. Thank you, Your Honor. I think the first issue I want to address is the knowing involuntary guilty plea. That's the issue the government still hasn't addressed. That's the issue that's solely their burden. It's indisputably de novo review. And going back to de novo review, again, we're raising Brady issues that are solely legal issues. None of these issues, I think, are ones where the district court had a unique view of the evidence. It's all paper evidence, and I don't think the court ever made credibility determinations. In fact . . . But the ultimate decision to deny the withdrawal is a legal decision, isn't it, that we review for abuse of discretion? Is that accurate? Yes, typically. But my argument is that since we have a constitutional issue, it becomes de novo. And I think that's typically how constitutional issues are reviewed by this Court. But I think what concerns me here is that Mr. Wagner, you know, many times in his presentation said, well, we don't know. Well, if we don't know, I don't know how we affirm under these circumstances. Because the evidence is not just impeaching. It's exculpatory, at least potentially. And it's not our burden. We cite the cases. I don't need to prove actual . . . But how is the evidence potentially exculpatory? Right. Let me explain. Let's say Del Balconer planted this gun that was in the car. Was there any evidence of that? We couldn't cross-examine him on it. Because, again, they admit we didn't know about it. How can we make a credible allegation if we have no evidence to make that allegation? That would be a total failure on cross-examination. And so, again, I go back to a few good men. In order to, you know, get someone to admit they ordered the code read, you have to have the evidence, which we didn't have. Does it make a difference that the prosecution didn't know about either? And maybe it doesn't. But ultimately, it's a different scenario in which the government makes a conscious decision to hold something back, induces somebody to plead guilty, and the person pleads guilty, and then it's disclosed, versus not knowing about it, having all the knowledge the government has given to the defendant, and the defendant makes the conscious decision to plead guilty based on what he knew at the time, knowing that there's other things out there. It's a good point. Under Brady, it's their duty to know what the police knew. And they knew moments later, a day later, two days later, that DeBalkaner was lying. And I'm kind of surprised by the government's position here. Bad cops are bad cops. And I'm not saying the DOJ is bad because of it. But they should sever ties from DeBalkaner at this point because he is as bad as it gets. And I think it's just shocking and appalling. But I don't think it has to be an emotional issue. I think that even the Court said this is an unusual case, but didn't follow through on that. And what the government wants you to do is to affirm, based on rules of evidence, issues they didn't raise below. And so this Court's a court of review, not first view. I just don't see how that's appropriate or proper. To go to Chief Judge Smith's point, the rules of evidence, we have a lot of arguments as to why all this evidence is admissible under 404B. It goes to motive, intent, absence of mistake. So I think all that stuff would come in. And I do think that that's the appropriate place to do it is in the district court. And when the court didn't get a chance to rule on any of these things. You said the district court didn't rule. I just want to be clear. Propensity, mistake, intent, all of that was not raised to the district court. That's all being raised up here for the first time. Yes, Your Honor. Okay. And it goes to newly discovered evidence about not just this one time. I haven't even had a chance to talk about the 2006 incident where DeVolcaner extracted a legal confession. And the district court refused to even consider that evidence. There's no basis for the judge not to weigh that evidence. And the government tries to paint that as a credibility determination. There's no dispute that DeVolcaner is a bad, bad man that should serve six years in prison. So what is the result you seek from this court? A reverse remand to vacate his guilty plea and order a new suppression hearing. I see why I'm out of time. Thank you, Your Honors. Thank you, Mr. Goldberg. Thank you also, Mr. Wagner. The court appreciates both counsel for vigorous argument in supplementation to the briefing, which we've reviewed and will continue to study. We'll take the case under advisement and render decision in due course. Thank you.